IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

KRISTA MADER,

        Plaintiff

vs.

LAUREL HARRY, et al.,

        Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

1:24-CV-00319-RAL

RICHARD A. LANZILLO
Chief United States Magistrate Judge

MEMORANDUM OPINION ON
CORRECTIONS DEFENDANTS'
PARTIAL MOTION TO DISMISS
AMENDED COMPLAINT

IN RE: ECF NO. 33

## I.    Introduction

Corrections Defendants have moved to dismiss Plaintiff Krista Mader's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF No. 33.[1] For the reasons set forth below, the Court will grant Defendants' motion.

## II.    Background and Procedural History

Mader, an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), brought this pro se civil rights action against seven individuals at the State Correctional Institution at Cambridge Springs ("SCI-Cambridge Springs"): Secretary of Corrections Laurel Harry, Superintendent Lisa Graves, Lt.

---

[1] Although Corrections Defendants style their motion as a "partial motion to dismiss complaint," their motion seeks dismissal of all claims against them. To the extent their motion can be read as not challenging certain claims, the Court will nevertheless review the legal sufficiency of those claims as mandated by the screening provisions of 28 U.S.C. § 1915(e)(2).

Margaret McCurdy, Lt. Stephanie Hobeck, Captain Heidi Dugan, former Superintendent Michelle Overmyer, and Hearing Examiner Ryan Szelewski (collectively, "Corrections Defendants"). ECF No. 7.[2] Earlier in this litigation, the Court permitted Mader to file an Amended Complaint. *See* ECF No. 41. Her claims relate to Corrections Defendants' alleged refusal to permit her a retest following a positive drug urinalysis. *See* ECF No. 42.

As set forth in her Amended Complaint, the events giving rise to Mader's claims took place at SCI-Cambridge Springs between December 2023 and April 2024. ECF No. 42. On December 7, 2023, Mader was given a urine test. *Id.*, ¶ 1. On December 12, 2023, her "drug test came back positive for marijuana, as reported by Phamatech, Inc., the laboratory that handles urinalysis drug screens for the PA DOC." *Id.*, ¶ 2. As a result, Mader was sanctioned to 30 days in the RHU, no visitation for 60 days, no contact visits for 180 days, and loss of her prison job as a certified peer support specialist. *Id.*, ¶¶ 4, 26. Hearing Examiner Szelewski denied her request for a second urinalysis test and informed Mader that "her sample would be held at Phamatech, Inc., to be contested at [her] expense." *Id.*, ¶ 5. Mader's father and grandmother contacted Phamatech, Inc., to request a retest of Mader's sample and were told the company does "not do testing for private citizens. The DOC would need to request the retest." *Id.*, ¶ 6.

---

[2] Mader also sued Phamatech, Inc. and Responsible Employees, and Tuan Pham (collectively, "Phamatech Defendants"). *See* ECF No. 7. On motion by Phamatech Defendants, the Court dismissed with prejudice the claims against them and terminated them as defendants in this action. ECF No. 52.

On December 20, 2023, Mader asked Lt. McCurdy, Lt. Hobeck, and Captain Dugan for a retest and was told, "It is not in policy to give retests to inmates who fail drug tests." *Id.*, ¶ 7. According to Mader, however, in January 2024, "SCI Cambridge Springs afforded one inmate, J. Swick . . . , the opportunity of an immediate retest . . . which came back negative." *Id.*, ¶ 11. On January 17, 2024, Captain Conticelli "confirmed that inmate J. Swick . . . had been retested, but refused to have Plaintiff's sample . . . retested." *Id.*, ¶ 12. Two days later, former Superintendent Overmyer told Mader "the issue of false positive drug screen results reported by . . . Phamatech, Inc. was happening at multiple D.O.C. facilities." *Id.*, ¶ 13. Mader spoke to Hobeck and McCurdy again on January 23, 2024, and "[t]hey assured Plaintiff they would try to have her sample retested." *Id.*, ¶ 14. On February 8, 2024, Overmyer "denied having told Plaintiff" there was an issue with false positive results, and "[i]nformed Plaintiff that her sample held at Phamatech, Inc. would not be retested." *Id.*, ¶ 16. Mader spoke with Superintendent Graves in April 2024 and "was again denied the opportunity of a retest." *Id.*, ¶ 20. On April 12, 2024, Captain Dugan said a retest "would not occur, because due to Plaintiff's criminal charges, 'they had received push back from the higher ups' about allowing Plaintiff the opportunity of a retest." *Id.*, ¶ 21.

Mader appealed the misconduct and filed a grievance regarding inmate Swick "having been afforded the opportunity of a retest, but not the Plaintiff." *Id.*, ¶¶ 8–9, 15. She filed another grievance in January 2025 regarding a group of inmates who had misconduct charges "dismissed without further retesting" because "Phamatech,

Inc. had reported false positive results" for synthetic cannabinoids. *Id.*, ¶¶ 22–23. Mader also wrote to Superintendent Graves about the issue of false positive drug testing results. *Id.*, ¶ 24.

Based on the foregoing, Mader asserts Corrections Defendants discriminated against her in violation of her equal protection rights under the Fourteenth Amendment to the United States Constitution. *See generally* ECF No. 42. She also alleges a violation of a protected liberty interest under Article I of the Pennsylvania Constitution for loss of future employment and reputation. *Id.*, ¶ 26.

Corrections Defendants now move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 33.[3] The argue Mader's official capacity claims are barred by the Eleventh Amendment to the United States Constitution and further that the Amended Complaint fails to plead factual allegations sufficient to state a claim for relief. *See* ECF No. 34. Mader filed an opposition to the motion, ECF No. 47, and the matter is now ripe for disposition.[4]

## III.    Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must, under Federal Rule of Civil Procedure 8(a)(2), contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This

---

[3] While Corrections Defendants filed their motion to dismiss against the original complaint, the Court previously ordered it would consider Defendants' motion as applicable to the Amended Complaint. *See* ECF No. 41.

[4] The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367. The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case as authorized by 28 U.S.C. § 636(c).

"requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). In other words, plaintiffs must allege facts sufficient "to raise a right to relief above the speculative level" that "nudge[] their claims across the line from conceivable to plausible." *Id.* at 555, 570. Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).

In deciding a Rule 12(b)(6) motion, the Court accepts as true the complaint's well-pleaded factual allegations and examines them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). However, the Court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (internal quotations and citations omitted); *see Iqbal*, 556 U.S. at 678. The Court's focus is simply whether the challenged claims should be allowed to move forward, not whether the plaintiff will ultimately prevail on her claims. *See Twombly*, 550 U.S. at 563 n.8. Further, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents" when deciding the motion to dismiss. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Additionally, because the Court granted Plaintiff leave to proceed in forma pauperis in this action, *see* ECF No. 5, her pleading is subject to the screening

provisions in 28 U.S.C. § 1915(e)(2). That statute requires the Court to review the complaint for cognizable claims and sua sponte dismiss the action or any portion thereof that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (requiring dismissal of the case "at any time"); *Muchler v. Greenwald*, 624 F. App'x 794, 796 (3d Cir. 2015). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008); *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012).

Finally, because Mader is proceeding pro se, her allegations, "however inartfully pleaded," must be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (the "initial assessment of the *in forma pauperis* plaintiff's factual allegations must be weighted in favor of the plaintiff"). If the Court can reasonably read her Amended Complaint to state a valid claim upon which relief can be granted, it will do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *U.S. ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969). But while courts construe pro se pleadings liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), "there are limits to [this] procedural flexibility," and the litigant must still allege sufficient

6

facts to support a valid claim, *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV.    Discussion and Analysis

The essence of Mader's claim is that Corrections Defendants denied her requests to have her urine sample retested, despite a purported problem with false positive test results at DOC facilities, and despite SCI-Cambridge Springs affording inmate Swick the opportunity for a retest and dismissing misconduct charges for other inmates due to false positive results. Mader further maintains that, as a result of the disciplinary sanctions against her, she lost the opportunity to seek future employment as a certified peer support specialist and suffered reputational injury. Based on these allegations, the Amended Complaint appears to assert claims under the Fourteenth Amendment for violations of Mader's rights to equal protection and due process. Corrections Defendants argue the facts alleged fail to state a viable claim for relief against them. The Court agrees.[5]

### A.   Official Capacity Claims

To the extent Mader sues Corrections Defendants in their official capacities for money damages, such claims fail as a matter of law.[6]

---

[5] To the extent Mader's brief in opposition to the motion to dismiss includes additional factual allegations not found in her Amended Complaint, they will not be addressed. *Boston v. Prime Care Med., Inc.*, 2018 WL 3032853, at *5 n.6 (E.D. Pa. June 18, 2018) (a plaintiff "may not assert new claims or rely on new facts in response to a motion to dismiss"); *Hammond v. City of Philadelphia*, 2001 WL 823637, at *2 (E.D. Pa. June 29, 2001) ("A party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion." (collecting cases)); *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation omitted)).

[6] Mader initially sued Defendants in their individual and official capacities. *See* ECF No. 7, p. 3. The Amended Complaint, however, does not specify Defendants' capacities. *See* ECF No. 42.

As Defendants correctly assert, the Eleventh Amendment to the United States Constitution precludes suits against a state and its agencies in federal court. U.S. Const. amend XI; *Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This protection extends to state employees sued in their official capacities. *See A.W. v. Jersey City Pub. Sch.*, 341 F.3d 234, 238 (3d Cir. 2003); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). Here, the DOC is an agency of the Commonwealth of Pennsylvania, and the Commonwealth has not waived its Eleventh Amendment immunity from lawsuits filed in federal court. Therefore, the Commonwealth, its departments, and their officials sued in their official capacities are immune from suit in federal court. *Johnson v. Wenerowicz*, 440 F. App'x 60, 62 (3d Cir. 2011); *Talbert v. Dep't of Corr.*, 2022 WL 17177479, at *4 (E.D. Pa. Nov. 23, 2022). As such, Mader's official capacity claims against Defendants for money damages are barred by the Eleventh Amendment. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310–11 (3d Cir. 2020); *Washington v. Wetzel*, 2022 WL 1782509, at *3 (W.D. Pa. June 1, 2022), *aff'd*, 2024 WL 5154024 (3d Cir. Dec. 18, 2024).[7]

B. Personal Involvement

To state a claim under § 1983, a plaintiff must demonstrate that each defendant, acting under color of state law, deprived the plaintiff of a right secured by

---

[7] Eleventh Amendment immunity does not bar suits against state officials in their official capacities for prospective injunctive relief. *Will*, 491 U.S. at 71 n.10; *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002).

the Constitution or laws of the United States. *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). When those claims implicate multiple defendants, the plaintiff "must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at \*3 (M.D. Pa. 2006) (alterations in original) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). This means that each defendant must have played an affirmative part in the complained-of misconduct. *See Baraka*, 481 F.3d at 210 ("A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" (citations omitted)). These principles apply with equal force where the defendants are supervising prison officials. *Iqbal*, 556 U.S. at 677 ("each Government official, his or her title notwithstanding, is only liable for his or her own misconduct"); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (liability for supervisory officials must still be based on "personal involvement in the alleged wrongs"); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (liability must be demonstrated by showing that the defendant personally directed or, with actual knowledge, acquiesced in the conduct). In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See, e.g., Mearin v. Swartz*, 951 F. Supp. 2d 776, 782 (W.D. Pa. 2013) (dismissing claims against certain defendants because the complaint was "devoid of any facts suggesting that [they] . . . had any personal involvement" in the alleged Eighth Amendment violation).

9

Here, the Amended Complaint wholly fails to plead Secretary Harry's personal involvement in the alleged deprivation of Mader's constitutional rights. There are no averments specific to Harry; rather, Mader merely listed Harry in the caption of the original complaint. To the extent Mader seeks to hold Harry liable as a supervisor, supervisory liability "cannot be predicated solely on the operation of respondeat superior," *Evancho*, 423 F.3d at 353 (citation omitted), and "merely hypothesiz[ing] that [Secretary Harry] may have been somehow involved simply because of h[er] position" does not create a plausible basis for inferring her personal involvement, *id.* at 354. *See Carroll v. Delaware County*, 2023 WL 2868020, at *19 (E.D. Pa. Apr. 10, 2023) ("Generalized allegations a supervisory state actor is 'in charge of' or 'responsible for' an office or facility are insufficient to allege personal involvement in an underlying constitutional violation."); *Kloss v. SCI-Albion*, 2018 WL 4609144, at *4 (W.D. Pa. Aug. 15, 2018) (allegation that supervisory defendant is legally responsible for operation of prison and welfare of its inmates is insufficient to show personal involvement), *report and recommendation adopted*, 2018 WL 4599814 (W.D. Pa. Sept. 25, 2018).

Additionally, to the extent Mader is attempting to include defendants whose sole relation to the allegations is participation in the grievance process, it is "well established that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct." *Mearin*, 951 F. Supp. 2d at 782; *see Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) ("an officer's review of, or failure to investigate, an inmate's

grievances generally does not satisfy the requisite personal involvement"). Thus, to the extent Mader predicates Harry's—or any other Defendant's—liability on that Defendant's failure to respond favorably to Mader's misconduct or grievance appeals, such allegations are insufficient to establish the Defendant's personal responsibility for the alleged constitutional violations. *See Rode*, 845 F.2d at 1208 (a defendant's failure, after being informed of the violation through the filing of grievances, reports, or appeals, to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement); *e.g.*, *Powell v. McKeown*, 2020 WL 4530727, at *11–12 (M.D. Pa. Aug. 6, 2020) (dismissing due process claims against superintendent and chief hearing examiner for lack of personal involvement).[8]

Accordingly, because the allegations here fall well short of the standard for personal involvement, dismissal of Mader's claims against Defendant Harry is warranted on this basis.

C. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that a state shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In this case, Mader advances a "class of one" equal protection claim. *See* ECF No. 42, ¶¶ 11–12, 15; ECF No. 47, p. 4. This requires her to establish that: "(1) the defendant treated h[er] differently from others similarly

---

[8] Further, "because a prisoner has no free-standing constitutional right to an effective grievance process, [Mader] cannot maintain a constitutional claim against [any Defendant] based upon h[er] perception that [such Defendant] ignored and/or failed to properly investigate h[er] grievances." *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (citation omitted).

situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006); *see Hammond v. Zaken*, 2024 WL 3593487, at *2 (W.D. Pa. July 31, 2024) ("To state [a class of one] equal-protection violation, [a plaintiff] must allege that 'he has been arbitrarily treated differently from similarly situated inmates' in all relevant respects." (citation omitted)); *Harris v. Thompson*, 2026 WL 237606, at *8 (W.D. Pa. Jan. 29, 2026) ("A stand-alone allegation of unequal treatment without factual allegations identifying comparators, discriminatory intent, or disparate treatment—is insufficient to state an equal protection claim."). Here, the Amended Complaint fails to plead sufficient factual content to support that Corrections Defendants arbitrarily treated Mader differently from others who were similarly situated to her in all relevant respects.

"Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (citation omitted). Mader contends she was treated differently than inmate J. Swick because SCI-Cambridge Springs afforded Swick "the opportunity of an immediate retest." ECF No. 42, ¶ 11. However, there are no allegations describing the circumstances surrounding Mader's and Swick's testing, or Swick's retest, such that they are similarly situated. *See Margetta v. Ferguson*, 2018 WL 1430936, at *3 (M.D. Pa. Mar. 22, 2018) ("When alleging the existence of similarly situated individuals, plaintiff cannot use allegations . . . that amount to nothing more than conclusory, boilerplate language to show that he may be entitled to relief, and bald

12

assertion[s] that other[s] . . . were treated in a dissimilar manner will not survive dismissal." (alterations in original) (internal quotations and citations omitted)).[9] The Amended Complaint also suggests Mader was treated differently than a group of inmates who tested positive for synthetic cannabinoids in January 2025 and subsequently had their misconduct charges dismissed without retesting because "[i]t was conceded Phamatech, Inc. had reported false positive results." ECF No. 42, ¶ 22. But there are no allegations to support that the circumstances of testing and misconduct charges for these inmates were similar to Mader's circumstances over a year prior.

Further, Mader's own allegations support that she was treated the same as other inmates. Mader acknowledges that her urinalysis test came back positive for marijuana. ECF No. 42, ¶ 2. She further admits that "multiple other inmates were confined to the RHU for positive urine drug screens" in the month following her positive urinalysis test, and that Defendants McCurdy, Hobeck, and Dugan informed her that "[i]t is not in policy to give retests to inmates who fail drug tests." *Id.*, ¶¶ 7, 10. Such allegations fail to show that other similarly situated inmates were treated more favorably than Mader. To the contrary, the Amended Complaint alleges it is a facility-wide policy to treat inmates as Mader was treated when it comes to the use of positive drug tests in disciplinary proceedings.

---

[9] Additionally, Mader argues in her opposing brief that Defendants treated her differently than inmate Swick because Mader is incarcerated for drug charges while "Swick was incarcerated for charges that were sexual in nature." ECF No. 47, ¶ 34. As such, Mader is not similarly situated to Swick.

13

The facts set forth here are likewise insufficient to show any intentional or purposeful discrimination by Corrections Defendants. That, consistent with the stated policy, Corrections Defendants denied Mader's requests for a retest, shows an absence of arbitrary differential treatment. And, with the exception of inmate Swick, there are no allegations that SCI-Cambridge Springs permitted retests for other inmates.[10] Moreover, there are no allegations that any named Defendant personally played a role in permitting Swick's retest, nor in dismissing the misconducts for the group of inmates who tested positive for synthetic cannabinoids. The Amended Complaint thus fails to plead facts to support that Corrections Defendants intentionally and arbitrarily treated Mader differently from other similarly situated inmates when they denied her requests to retest her urine sample. *See Bailey v. Kauffman*, 2021 WL 5846942, at *6 (M.D. Pa. Dec. 9, 2021), *aff'd*, 2022 WL 1115136 (3d Cir. Apr. 14, 2022).[11]

Accordingly, the Amended Complaint fails to state a Fourteenth Amendment equal protection claim based on Corrections Defendants' alleged failure to afford Mader the opportunity for a retest.

---

[10] To the extent Mader contends Corrections Defendants refused her a retest because of the nature of her criminal charges, *see* ECF No. 42, ¶ 21; ECF No. 47, ¶¶ 33–35, the Amended Complaint likewise fails to allege that Defendants permitted retests for other inmates with similar charges. Indeed, if SCI-Cambridge Springs had a policy of not permitting retests for inmates incarcerated on drug charges, this would show Mader was treated the same, not differently, than similarly situated inmates.

[11] For these same reasons, Mader's insufficient allegations of personal involvement negate her ability to establish Corrections Defendants' intentional discrimination. *See Van Tassel v. Piccione*, 608 F. App'x 66, 69–70 (3d Cir. 2015) (non-specific allegations that broadly implicate a defendant without delineating individual conduct are legally insufficient); *e.g.*, *Williams v. Pa. Dep't of Corr.*, 2023 WL 2655406, at *9 (W.D. Pa. Feb. 2, 2023), *report and recommendation adopted*, 2023 WL 2652298 (W.D. Pa. Mar. 27, 2023).

D. Due Process

The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1, and contains both substantive and procedural components, *County of Sacramento v. Lewis*, 523 U.S. 833, 840, 845–46 (1998). The latter guarantees fair process in governmental decisions, while the substantive aspect "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Id.* at 840 (citation omitted). Relevant here, to state a procedural due process claim, a plaintiff must allege facts that show "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (citation omitted). Under this standard, the Court only reaches the issue of the adequacy of the procedural process provided if the plaintiff first establishes an interest protected by the Fourteenth Amendment. *See Renchenski v. Williams*, 622 F.3d 315, 325 (3d Cir. 2010).[12]

---

[12] As an initial matter, the "more-specific-provision" rule precludes Mader from bringing a substantive due process claim. "Under this rule, 'if a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). In this case, Mader's substantive due process claims appear to be predicated upon alleged procedural deficiencies in the misconduct proceedings, and/or alleged disparate treatment by Defendants. Accordingly, because such allegations fit squarely within the Fourteenth Amendment's equal protection and procedural due process clauses, Mader's substantive due process claim—to the extent one is asserted—should be dismissed as redundant. *E.g.*, *Willard v. Pa. Soc. for the Prevention of Cruelty to Animals*, 525 F. App'x 217, 219 n.4 (3d Cir. 2013) (affirming dismissal of substantive due process claim because it sought to redress the same harm alleged in plaintiff's procedural due process claim).

15

Mader's due process claim fails at the first step of the analysis because the Amended Complaint does not allege facts to support a protected interest. A legally cognizable liberty interest exists only when "severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing," or where some punishment or condition to which the prisoner is subjected "imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Renchenski*, 622 F.3d at 325 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The law is clear, however, that "confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical'

---

Alternatively, the allegations here are insufficient to make a plausible claim of deliberate indifference shocking the conscience. When evaluating a substantive due process challenge to government conduct, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8. Stated another way, the challenged conduct must be "intended to injure in some way unjustifiable by any government interest." *Id.* at 849. "Whether an incident 'shocks the conscience' is a matter of law for the courts to decide." *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 174 (3d Cir. 2004) (citing *Rochin v. California*, 342 U.S. 165, 172 (1952)). "Neither negligence nor gross negligence is enough" to meet this standard, *Knight*, 942 F.3d at 343, and "[t]he simple lack of due care does not make out a violation of . . . the Due Process Clause," *Pabon v. Wright*, 459 F.3d 241, 250 (2d Cir. 2006). Further, "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference that 'shocks the conscience' for a substantive due process violation." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020) (quoting *Lewis*, 523 U.S. at 486).

Mader maintains Corrections Defendants refused her requests to have her urine sample retested, despite SCI-Cambridge Springs affording inmate Swick such opportunity, and despite a purported problem with Phamatech, Inc. reporting false positive test results at multiple DOC facilities. These allegations do not support a finding of conscious-shocking behavior. As discussed above, Corrections Defendants denied Mader's requests for a retest consistent with the prison's stated policy, and there are no allegations to support that any Defendant was aware of particular circumstances in Mader's case warranting a departure from that policy. Moreover, the Court cannot see how Defendants' actions relating to the disciplinary proceedings—issuing a misconduct for a positive drug test, denying Mader's requests for a second urinalysis test, and issuing sanctions similar to those imposed on other inmates for positive drug tests—could be found to shock the conscious. Accordingly, Mader's "allegations concerning the prison's use of a potentially unreliable testing system do not rise to the level necessary to support a substantive due process claim." *Davis v. Adams*, 2025 WL 4681996, at *5 (W.D. Pa. Oct. 6, 2025), *report and recommendation adopted*, 2026 WL 763831 (W.D. Pa. Mar. 18, 2026).

16

deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002); *see also Burns v. PA Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011) ("inmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest").

Here, Mader contends the loss of her prison job as a certified peer support specialist violates her right to maintain her certification and pursue the same position upon release from custody. Insofar as Mader predicates her due process claim on the loss of her prison job, restrictions on visitation, or confinement in the RHU, she has not alleged the deprivation of a protected interest. *Mack v. Warden Loretto FCI*, 839 F.3d 286, 300 n.76 (3d Cir. 2016) (prisoners have no protected liberty or property interest in prison employment); *Henry v. Dep't of Corr.*, 131 F. App'x 847, 849 (3d Cir. 2005) (neither the due process clause nor Pennsylvania regulations guarantee inmates a protectable interest in prison visitation); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) ("exposure to the conditions of administrative custody for periods as long as 15 months 'falls within the expected parameters of the sentence imposed [on a prisoner] by a court of law'"); *e.g.*, *Perry v. Lackawanna Cnty. Child. & Youth Servs.*, 345 F. App'x 723, 726 (3d Cir. 2009) (disciplinary sanctions to "30 days of solitary confinement, 60 days without visiting privileges, and loss of [inmate's] institutional employment . . . do not qualify as an 'atypical or significant hardship' under *Sandin*"). She also cannot plausibly allege a protected interest in hypothetical future employment opportunities, *see Bryan v. Werner*, 516 F.2d 233, 240 (3d Cir.

17

1975) ("an inmate's expectation of keeping a particular prison job" does not amount to a protected liberty or property interest); *Baraka*, 481 F.3d at 205 ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." (citation omitted)); *Hill*, 455 F.3d at 234 ("To have a property interest in a job . . . a person . . . must have a legitimate entitlement to such continued employment." (citation omitted)); *Guthrie v. Borough of Wilkinsburg*, 478 A.2d 1279, 1282 (Pa. 1984) ("mere theoretical effect on possible . . . future employment prospects is too abstract to constitute a property interest"), or any educational or certification programs required to pursue such opportunities, *see Ray v. McDonald*, 2022 WL 969618, at *7 (M.D. Pa. Mar. 30, 2022) ("Because there is no liberty or property right to a prison job, . . . it [is] axiomatic that there [is] no liberty or property right to the certification that is a prerequisite for the prison job."); *Clark v. Cambria Cnty. Prison*, 2012 WL 6651880, at *7 (W.D. Pa. Nov. 15, 2012) ("federal courts agree that there is no inherent liberty interest in a prison job or educational opportunities arising from the Due Process Clause," nor do Pennsylvania prisoners "have any state created liberty or property interest in work or educational programs" (collecting cases)), *report and recommendation adopted*, 2012 WL 6644276 (W.D. Pa. Dec. 20, 2012); *Rokita v. Pa. Dep't of Corr.*, 325 A.3d 1036, n.2 (Pa. Commw. Ct. 2024) (prisoners have no legally cognizable interest in access to post-secondary educational offerings).  Thus, as to Mader's claimed right to maintain her certification for prospective employment opportunities, "this concern

18

does not relate to any interest entitled to due process protections." *R. v. Com., Dep't of Pub. Welfare*, 636 A.2d 142, 148 (Pa. 1994); *e.g.*, *Ray*, 2022 WL 969618, at *7 (dismissing due process claims based on loss of inmate's certification and certified peer specialist prison job).[13]

Further, because the allegations here do not support the deprivation of a non-reputational protected right or interest, Mader cannot invoke the procedural protection of the due process clause for reputational harm. *See Paul v. Davis*, 424 U.S. 693, 712 (1976) (harm or injury to interest in reputation alone, "even where . . . inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property'"); *Hill*, 455 F.3d at 236 ("to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest"); *D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, 552 F. App'x 110, 113 (3d Cir. 2014) ("reputation damage is not actionable unless 'it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution'" (citation omitted)); *Clark v. Township of Falls*, 890 F.2d 611, 620 (3d Cir. 1989) ("The possible loss of future employment opportunities is patently insufficient to satisfy the requirement imposed by *Paul* that a liberty interest requires more than mere injury to reputation."); *e.g.*, *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (inmate's

---

[13] *See also Leibert v. Phila. Hous. Auth.*, 474 F. App'x 76, 79 (3d Cir. 2012) ("employment is not a fundamental right, and therefore cannot be claimed as the subject of a substantive due process violation"); *Garcia v. Kimmel*, 2009 WL 2950628, at *13 (W.D. Pa. Sept. 9, 2009) (characterizing it as "beyond question" that the failure to provide an inmate with education opportunities for his desired vocation did not shock the conscience for purposes of a substantive due process claim), *aff'd*, 381 F. App'x 211 (3d Cir. 2010).

claim for injury to reputation, allegedly damaged by filing of false misconduct report and related disciplinary sanctions, failed to state actionable due process claim); *Santos v. York Cnty. Dist. Att'y*, 2024 WL 6473639, at *6 (M.D. Pa. Jan. 11, 2024) (inmate's allegation that false accusations "will make it more difficult to find employment and housing after he is released from prison do not amount to the deprivation of a previously held federal right without due process of law"), *report and recommendation adopted*, 2024 WL 6473298 (M.D. Pa. Apr. 22, 2024).

In the absence of a protected liberty or property interest, any defects in the investigation and hearing relating to the misconduct charge against Mader do not, as a matter of law, support an actionable Fourteenth Amendment procedural due process claim. *E.g.*, *Bailey*, 2022 WL 1115136, at *3 (affirming dismissal of inmate's due process claim alleging prison used unreliable testing methods and denied inmate's requests for retest, finding sanction to 45-days disciplinary custody and loss of visitation did not deprive inmate of protected liberty interest); *Davis*, 2026 WL 763831, at *3 (dismissing with prejudice prisoners' due process claim alleging prison used unreliable urinalysis testing method, reasoning because plaintiffs did not allege a protected interest, "they cannot raise a procedural due process claim based on the loss of that interest").[14]

---

[14] Additionally, as the district court in *Bailey* observed, "numerous courts have held that a prisoner does not have a constitutional right to an additional drug test to verify the results of an initial positive test." 2021 WL 5846942, at *10 (quoting *White v. Stansil*, 2016 WL 4009954, at *6 (E.D. Cal. July 25, 2016) (collecting cases)).

E.  Leave to Amend

*Pro se* litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend . . . unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004), *abrogated on other grounds by Iqbal*, 556 U.S. at 678. However, the court "need not provide endless opportunities for amendment, especially where such opportunity already has been enjoyed." *Baker v. Moon Area Sch. Dist.*, 2018 WL 4057179, at *8 (W.D. Pa. Aug. 27, 2018) (internal quotations and citation omitted). Indeed, a district court's "substantial leeway in deciding whether to grant leave to amend" is "even broader" where "the court has already granted the requesting part an opportunity to amend his complaint." *Lake v. Arnold*, 232 F.3d 360, 373–74 (3d Cir. 2000).

In this case, given the nature of the defects in Mader's claims, and considering that Mader has previously been put on notice of the defects in her pleading via Defendants' motions to dismiss and permitted to file an amendment, the Court finds it would be futile to allow Mader to file another amended complaint with respect to her Fourteenth Amendment claims against Corrections Defendants. *E.g., Davis*, 2026 WL 763831, at *3 (finding amendment would be futile as to procedural and substantive due process claims regarding prison's use of purported unreliable testing methods). The Court will therefore dismiss this action with prejudice. *See, e.g., Jones v. City of Phila. Hous. Dep't*, 573 F. App'x 138, 139 (3d Cir. 2014) (affirming dismissal with prejudice for failure to state a claim where any further amendment would be futile).

21

V.      Conclusion

For the foregoing reasons, Corrections Defendants' motion to dismiss the Amended Complaint will be GRANTED.  Pursuant to the motion and the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B), this action will be dismissed with prejudice for failure to state a claim.

A separate order follows.

DATED this 11th day of June, 2026.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE